## JOHNSON v. PELOT.

1. In an action for partition, an order referring the case to the master "to state the account of the defendant for the receipts of rents and profits of said lot of land for a period commencing six years prior to the commencement of this suit and extending up to the date of his report, together with all improvements thereon," was an order of inquiry only, and did not fix any liability upon defendant for the rent of houses on the premises.

2. Where a co-tenant in the *bona fide* belief that she is sole owner, erects improvements upon a vacant lot, she is not liable for the rents received from such improvements, before demand made, nor for any ground rent of the otherwise profitless lot.

3. The whole lot being divided between the plaintiff and defendant, allotting to plaintiff one-half in area and value, on which stood a house erected by defendant in good faith under a belief of exclusive ownership in herself, and allotting to defendant the other half on which stood a house, also erected by herself, and an old kitchen, the plaintiff is liable to account for the value of the house on his half, and the defendant for the half value of the kitchen.

4. This being an equity case, costs were in the discretion of the Circuit Judge.

5. A co-tenant, who in the *bona fide* belief of exclusive ownership, improves the common property, should be allowed the benefit of his improvements in the final division or sale of the property; and this right does not depend upon the mode of enforcing it, adopted in other cases.

6. Petition for rehearing refused.

Before Kershaw, J., Richland, July, 1885.

This was an appeal from the following Circuit decree:

The report makes no recommendations, but simply stated the accounts, the master therein obeying the order of reference, and supplying the facts necessary to a decree by the court.

As to the exceptions, I think they are not well taken. The decree did not commit the valuation of the improvements to the commissioners, but distinctly referred it to the master. The valuation made by the commissioners was no more than an expression of opinion on their part by individuals, and in no way binding upon any one. The master proceeded properly to take the testimony of witnesses, and to decide upon such testimony.

The second exception is not well taken, because the decree directed the accounts to be taken of "the receipt of rents and profits," and not for the use and occupation of the premises, the presiding judge no doubt holding that the defendant was not actually in possession of more than her share of the premises, and that she ought not to be charged for the use of a house erected at her own cost.

The exceptions must therefore be overruled, and the report confirmed.

It remains to consider and determine the rights of the parties in relation to the improvements, and the rents and profits. And first the question arises whether the decree has already deter-

mined that the defendant is chargeable with her receipts of rents and profits, and to be allowed for her improvements. The decree has determined nothing upon those questions, but very properly referred the subject to the master to state the accounts, in order that when the question came before the court for determination, a full and complete decision might be made. The partition of the land alone was committed to the commissioners, and these questions were reserved for consideration at a future period.

I will therefore proceed to determine these questions, and first as to the plaintiff's right to the rents and profits claimed. Defendant held the premises as her own, believing herself entitled to the same as her own and exclusive property, without any knowledge or notice of the plaintiff's rights therein, and under such circumstances as were well calculated to induce such belief, she was entirely innocent, and held *bona fide*. When the possession of the defendant commenced, there was no building upon the lot but the "old kitchen." All other improvements thereon were made by the defendant. All the rents received, except from the old kitchen, were due to those improvements.

A tenant in common is not chargeable for rents and profits derived from improvements made by himself, "when he had reason to believe, and did honestly believe, that he had fee simple title in severalty to the land so improved." "In such cases the tenant will be allowed compensation; and if practicable, in partition, the part of the land so improved will be assigned to the tenant who made the improvements, without charging him with the value of said improvements; that is to say, the partition will be made without reference to the improvements." This is the language of the court in the latest case on the subject; *Buck* v. *Martin*, 21 *S. C.*, 592; citing *Williman* v. *Holmes*, 4 *Rich. Eq.*, 476; *Scaife* v. *Thomson*, 15 *S. C.*, 337; *Annely* v. *DeSaussure*, 17 *Id.*, 391; *Johnson* v. *Harrelson*, 18 *Id.*, 604.

In the case cited, it was ordered that the commissioners should assign, if practicable, to the improving tenant the portion improved without charging her for the value of the improvements, or if the land be sold, that the amount added to the value of the land by the improvements be allowed her out of the proceeds of sale before an equal division of the same. In that case the co-

tenants had concurred, some being minors, in permitting the improvements, but the court applied to the case the same principle applicable to the cases of tenants who *bona fide* believe themselves the sole owners of the land; that principle is stated as follows in 1 *Story Eq. Jur.*, § 655: "When improvements have been erected by a co-tenant, which add value to the common estate, and erected under circumstances which would make it a great and obvious hardship upon the improving tenant to deprive him entirely of the benefit of such improvements, throwing their whole value into the common estate for partition, the disposition of the Court of Equity has always been to give the improving tenant the benefit of them, so far as consistent with the equity of the co-tenants."

If this manifest equity of an improving tenant is so strong as to entitle him to the whole value of his improvements, surely it will protect him from accountability for the rents and profits received by him, due wholly to such improvements. But we are not left to this analogy, but have authority on the very point in *Lewis* v. *Price* (3 *Rich. Eq.*, 198), where it was said by the court, "Rent is not allowable for premises which the tenant has rendered capable of yielding rent, which they could not before; and that by parity of reasoning the tenant is not chargeable for so much of the rent of the premises as his improvements have contributed to produce."

It follows, from these authorities, that the defendant is accountable for neither the value of the improvements made by herself, not for rents received by her, which were due to the improvements made by herself. The kitchen was on the premises when the tenant went into possession. She must account for the rent received on it, but such accounting ought not to extend further than to the receipts on that account, accruing since the demand of the plaintiff to be admitted to her share of the common estate. Until that time there was no *ouster*, and therefore no right to share in the rents received.

The commissioners appear to have considered the parcels of land divided to be of equal value without the improvements, which they value separately. They allotted to the defendant that portion upon which the kitchen was situated, and to the

plaintiff that portion upon which was the work-shop erected by the defendant.    The former (the kitchen) is valued by the master at one hundred dollars, and the work-shop at two hundred dollars.    The defendant must pay to the plaintiff the half of the value of the kitchen, while she is entitled to the whole value of the work-shop.  Setting off the one against the other, the plaintiff must pay one hundred and fifty dollars to the defendant for equality in respect of the improvements.   But the defendant must account to the plaintiff for the one-half of the rent of the kitchen from the time of the commencement of this action, and will be allowed credit for so much of the taxes as she has paid since the same date, as is chargeable, to wit, one-half of the tax upon the land and the kitchen, without regard to the other improvements.

It is therefore ordered and adjudged, that it be referred to the master to adjust the accounts between the parties upon the principles and in the manner herein set forth and determined, and to report the same to this court; and that in all other respects the report of the master, hereinbefore made, be confirmed, and the exceptions thereto be overruled; that the return of the commissioners in partition, in so far as concerns the allotment made by them of their respective moieties of the said lot of land to the parties, be confirmed, and that they be vested respectively in the said parties in severalty, and that they be let into possession of the same accordingly; subject, however, to the result of the accounting herein provided for, and the payment of any assessment that may be made thereon by the court in pursuance thereof; that each party pay one-half of the costs of this action.

*Messrs. Lyles & Haynsworth*, for plaintiff.

*Mr. S. W. Melton*, contra.

February 24, 1886.   The opinion of the court was delivered by

Mr. Chief Justice Simpson.   The purpose of the action below was to partition certain real estate situate in the city of Columbia, and in possession of the defendant, in which plaintiff claimed a moiety.   The plaintiff's title being disputed, this ques-

tion was submitted to a jury, who found for the plaintiff one-half of the land. Thereupon the Circuit Judge, Hon. W. H. Wallace, after stating certain facts found by himself, ordered a writ in partition, awarding one-half in fee to the plaintiff and the remaining half in fee to the defendant. "At the same time he referred the case to the master to state the account of the defendant, Octavia Pelot, for the receipts of rents and profits of said lot of land for a period commencing six years prior to the commencement of this suit and extending up to the date of his report, together with all improvements thereon."

The commissioners in charge of the writ made their return in January, 1885, in which they stated that they had divided the land into two equal portions as to area, each fronting on Gervais street, and had allotted to the defendant the western half, and to the plaintiff the eastern. On the western half was a dwelling, or store, which had been erected thereon by the defendant during her possession, and a kitchen which was there when she took possession. The dwelling, or store, they valued at $300, the kitchen at $100. On the eastern half was a store, or work-shop, erected by the defendant; this they valued at $150.

The master made his report, valuing the dwelling at $400, the kitchen at $100, and the work-house, or store, at $200. He also reported upon the rents and profits received by the defendant for six years, amounting to $313—$183.75 of which was derived from the kitchen, the balance from the other houses, principally the work-shop; upon which aggregate, after crediting taxes, $166.50, a balance was left of $146.50. The master made no recommendation, but simply reported the facts. He also reported the rental value of these houses. To this report the plaintiff excepted : 1. Because the master did not adopt the valuation fixed by the commissioners in partition, as the true value of the improvements. 2. Because the master did not find that the defendant had occupied the dwelling from December 15, 1877, and did not charge her with the rental value thereof.

The case then came up before his honor, Judge Kershaw, who overruled the exceptions and confirmed the report, and, holding that the case had been referred to the master for no other purpose but to collect the facts in reference to receipt of rents and

profits by the defendant and the value of the improvements, so that the rights of the parties might be properly adjudicated, proceeded to such adjudication, holding that the defendant was not accountable for either the value of the improvements made by herself or the rents received from such improvements, but that she was accountable for the rent received from the kitchen, such accounting, however, not to extend beyond the time of demand by the plaintiff to be admitted to her share of the common estate; and, adopting the value of the improvements as estimated by the master instead of the commissioners, he held that the defendant was responsible to the plaintiff for half of the kitchen, $50, and that plaintiff was responsible for the whole value of the store or work-shop on her lot, it having been erected thereon by the defendant, to wit, $200; resulting to the defendant from plaintiff $150 out of the improvements, the defendant to account for one-half of the rents received from the kitchen from the commencement of the action, first deducting therefrom one-half taxes paid on said kitchen from same date. He ordered and adjudged, that it be referred to the master to adjust the accounts between the parties according to the principles set forth, and that in all other respects the report of the master under consideration be confirmed and the exceptions thereto be overruled, each party to pay one-half of the costs.

Both parties appealed, the plaintiff alleging: I. That his honor should have held the decree of Judge Wallace as fixing the liability of defendant for rents and profits for a period of six years before the action, and that he should, therefore, have decreed such liability as to the kitchen. II. That he should have held defendant to accountability for the ground rent of that portion of the premises improved by the defendant. III. Because he erred in holding the plaintiff accountable for the value of the store or shop erected by the defendant upon that portion of the lot assigned to the plaintiff. IV. Because the costs had been fixed in the decree of Judge Wallace upon the defendant, and Judge Kershaw should have so held. The defendant's appeal raises but one question, to wit, that his honor erred in decreeing that the defendant should pay to the plaintiff the half value of the kitchen as ascertained by the master.

We think the construction put by Judge Kershaw upon the decree of Judge Wallace, in referring the case to the master, was correct. At the time that Judge Wallace ordered this reference, the case was not ripe for settling the rights of the parties. The facts were not before him; they had not been fully developed, especially as to the very matters involved, and upon which a final decree was to be made. Judge Wallace did not in his decree lay down any principle to which the report should conform; he simply required the master to ascertain certain facts, to wit, the receipts by the defendant of the rents and profits of the whole lot for six years, together with the improvements. It does not seem to be contended that this decree fixed accountability upon the defendant for the whole lot. Why not, if it fixed accountability as to the kitchen for the six years? The order of Judge Wallace, in our opinion, was no more than an intermediate order, searching for information, preparatory to a final decree, upon which information Judge Kershaw properly proceeded to adjudicate the rights of the parties, untrammelled.

As already stated, we do not understand that plaintiff contends that the decree of Judge Wallace fixed any liability on the defendant for rents and profits received from improvements erected by her on the lot, but she contends that the accountability of defendant as to the rent of the kitchen was fixed, and this for six years, and she now raises the question that whether this was fixed or not, yet that his honor erred in not requiring the defendant thus to account, and also in not requiring an accounting for the ground rent of so much of the lot upon which the new buildings stood, this much at least being, as alleged, common property, made use of by the defendant. It appears among the findings of fact by the master that the defendant went into possession of the lot in question upon the death of her grandmother, Suckey McGru, "under the belief that she was the sole owner," and she no doubt so held it until the demand by action was made upon her, erecting improvements thereon without question. Under these circumstances, the law permits her to be exempt from liability for the rents and profits anterior to a demand by action. See the case of *Woodward* v. *Clarke*, 4 *Strob. Eq.*, 170, and especially our recent case of *Scaife* v.

*Thomson*, 15 *S. C.*, 368 ; *Freeman on Co-ten.*, § 258, and *Riddlehoover* v. *Kinard*, 1 *Hill Ch.*, 381. We do not find that his honor, the Circuit Judge, erred in applying the principle of these cases to the facts here.

As to the ground rent of the precise *locus* upon which the improvements were erected, or of the unimproved portion, the master does not seem to have estimated this, nor did the Circuit Judge rule upon that point. There was no exception to the master's report involving this point, nor any claim made for it before the Circuit Judge; but even if this question was properly before us, we have been referred to no case, nor have we found any, where, in estimating rents and profits against a co-tenant for improvements, a distinction has been drawn between said improvements and the ground upon which they stood, the improving tenant being exempt for the one and held liable for the other. It is manifest here that the unimproved ground was worthless except for the improvements, and also that that portion on which the improvements were erected was made rentable only on account of the improvements, so that its rentable value, if any, was due to the improvements, and might well be classed as an improvement made by the tenant's own labor, and therefore exempt, as the houses have been exempt. *Lewis* v. *Price*, 3 *Rich. Eq.*, 198.

The equity of the defendant in this case to be reimbursed for her improvements on the portion of the lot assigned to the plaintiff is supported by the following authorities: *Scaife* v. *Thomson, supra ; Woodward* v. *Clarke*, 4 *Strob. Eq.*, 167 ; *Rowland* v. *Bess*, 2 *McCord Ch.*, 317. Judge Kershaw says that the commissioners seem to have considered the parcels of land allotted to each of the parties to be of equal value without the improvements. These improvements, then, were left open as a matter for adjudication in the final determination of the rights and equities of the parties, and we do not think that Judge Kershaw erred in requiring the plaintiff to account for the value of the store or shop erected on her lot at the expense of the defendant under the circumstances of the case.

There is no ground for defendant's exception claiming exemption from the half value of the old kitchen, as decreed by the judge.

The only thing remaining is the matter of costs. This is an equity case, and the costs are under the control of the judge, if he sees proper to decree on that question; otherwise costs follow the event of the suit, as in cases at law. Judge Wallace's order 'of reference was not such a final· decree as would carry costs, in the absence of an order otherwise. It was competent, therefore, for Judge Kershaw to decree on this matter.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.

In this case a petition was filed by the plaintiff asking a rehearing of so much of her appeal as was embraced in her third exception, upon the' ground that a tenant in common, to whom has been assigned in severalty a portion of the land, cannot be required to pay for improvements put, without his consent, upon such portion by a co-tenant; citing and quoting from *Dellet* v. *Whitner, Chev. Eq.*, 229; *Martin* v. *Evans,* 1 *Strob. Eq.*, 355; *Thurston* v. *Dickinson,* 2 *Rich. Eq.*, 317; *Lewis* v. *Price,* 3 *Id.*, 198; *Thompson* v. *Bostick, McMull. Eq.*, 79; *Williman* v. *Holmes,* 4 *Rich. Eq.*, 476; *Scaife* v. *Thomson,* 15 *S. C.*, 337; *Annely* v. *DeSaussure,* 17 *Id.*, 391; *Buck* v. *Martin,* 21 *Id.*, 590.

May 24, 1886. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. As a general rule, and in ordinary cases, where co-tenants are well known and easy of access, and improvements are made by one without consultation with the others, they are made at the risk of the improving tenant, and will not,· as matter of right, be allowed him in the partition of the premises. 1 *Story Eq. Jur.*, § 655; *Thurston* v. *Dickinson,* 2 *Rich. Eq.*, 317; *Dellet* v. *Whitner, Chev. Eq.*, 223; *Hancock* v. *Day, McMull. Eq.*, 69; *Thompson* v. *Bostick, Ibid.*, 79. Where, however, improvements are made by one co-tenant under the belief that he has in severalty a fee simple title to the premises, or where said improvements have been erected under circumstances which would make it a great and obvious hardship upon the improving tenant to deprive him entirely of their benefit, the disposition of the Court of Equity

has always been to give him the benefit thereof if practicable, and as far as consistent with the equity of the co-tenants, especially as against the claim of one who subsequently thereto establishes his right as co-tenant. 1 *Story Eq.*, § 655.

Under this principle, the cases of *Williman* v. *Holmes*, 4 *Rich. Eq.*, 476; *Scaife* v. *Thomson*, 15 *S. C.*, 368; *Annely* v. *DeSaussure*, 17 *S. C.*, 391; *Johnson* v. *Harrelson*, 18 *S. C.*, 604; *Buck* v. *Martin*, 21 *S. C.*, 592, were decided, modifying the general rule above by allowing the improving tenant not the original cost of his improvements, but the increased value of the premises imparted in consequence of said improvements, this benefit being secured to him either by assigning the improved portion of the premises to him without charging the improvements, or by sale of the premises, the increased purchase money in consequence of the improvements being allowed him in the distribution of the proceeds of said sale. The equity, however, of the improving tenant to this added value does not depend upon the mode which was adopted in these cases to enforce it, but it rests upon the facts of each case, and is applicable to every case where the facts are of such a character as to demand it, and where, at the same time, it can be enforced without injustice to others, as where the improving tenant has reason to believe that he is the exclusive owner, or where it would be a great and obvious hardship to deprive him of it, and at the same time accompanied with the further fact that the allowance can be made consistently with the equity of the co-tenants. *Story Eq.*, *supra*.

Now, in the case at bar the improvements were made while the improving tenant was in the exclusive possession of the premises, holding as sole owner, and before even any claim or notice of opposing title had been made upon her. There was no doubt, therefore, as to the equity of her claim to the value of the improvements erected by her, and inasmuch as the added value of these improvements, independent of the land, was fully ascertained by testimony taken before the master at the time and with the view to the partition sought, the enforcement of this equity here, and under the facts of the case, was not only proper, but was in full accord with the cases, *supra*, sustaining the modification of the general rule. It will be seen at once, therefore, that

there is no conflict between the case at bar and the cases referred to in the petition and cited to the general rule. Nor were said cases overlooked by us in rendering our judgment.

We have been more elaborate in giving the reasons for dismissing this petition than usual, for the reason that there is a manifest misapprehension on the part of counsel as to the decisions of this court on the subject of improvements by co-tenants. The petition is dismissed.